FIELD and others, Respondents, vs. THE APPLE RIVER LOG DRIVING COMPANY, Appellant.

*December 15, 1886 — January 11, 1887.*

*(1) Possession of land sufficient as against wrong-doer. (2) Probate of will: Time of hearing: Presumption. (3, 4) Navigable river: Driving logs: Injuries to riparian owners.*

1. As against a mere wrong-doer a person in the possession of land need not show a perfect title.
2. The published notice fixed July 24 as the time for hearing an application to admit a will to probate, but the record shows that the hearing was in fact had on August 7. *Held*, that in the absence of proof to the contrary it will be presumed that other business prevented the hearing on the day fixed, or it was postponed to the subsequent day to suit the convenience of the parties in interest.

Field and others vs. The Apple River Log Driving Co.

3. Where logs are driven in a navigable river in an ordinarily prudent and skilful manner, the owner is not liable for damages which may result to the lands of riparian owners.

4. A corporation authorized by its charter to maintain dams and make all other improvements required to facilitate the driving of logs on a navigable river may be bound to prevent the formation of jams which increase the danger of injury to the shores, if it is practicable to do so by reasonable means; but when a jam is reasonably necessary and proper to facilitate the driving of logs the corporation is not bound to remove it, and is not liable for damage resulting therefrom to a riparian owner. Nor is the corporation bound to erect booms or other structures along the shore to prevent it from washing away, or to place men along the bank to prevent logs from striking it.

APPEAL from the Circuit Court for *St. Croix* County. Action to recover damages for injuries to lands situated on the Apple river, alleged to have been caused by the negligence of the defendant corporation. The plaintiffs were in possession of the land, claiming title under the will of Mary Field, deceased wife of the plaintiff *E. B. Field*, which had been admitted to probate August 7, 1876. The facts will sufficiently appear from the opinion. There was a verdict for the plaintiffs, and from the judgment entered thereon the defendant appealed.

For the appellant there were briefs by *Geo. B. Kidder*, attorney, and *Clapp & Macartney*, of counsel, and oral argument by *Mr. Clapp*. They argued, among other things, that the defendant was not bound to protect plaintiffs' land against injuries resulting from the use of the river for driving logs if reasonable care was used in driving. Where the grantees of a franchise or the agents of the state have not exceeded their powers and are not chargeable with want of ordinary care, no claim can be maintained against them for damages resulting from their acts. *Cohn v. Wausau Boom Co.* 47 Wis. 314; *Black R. Imp. Co. v. La Crosse B. & T. Co.* 54 id. 659–680; *Hollister v. Union Co.* 9 Conn. 436–443; *Lansing v. Smith*, 8 Cow. 146; *Canal Appraisers v.*

*People ex rel. Tibbets,* 17 Wend. 571; *People v. Tibbets,* 19 N. Y. 523; *Lawler v. Baring Boom Co.* 56 Me. 443; *Thompson v. Androscoggin R. Co.* 54 N. H. 558; *Smith v. Agawam Canal Co.* 2 Allen, 355; *Radcliff's Ex'rs v. Mayor,* 4 N. Y. 195; *Fay v. S. & D. Aqueduct Co.* 111 Mass. 27; *Comm'rs v. Withers,* 29 Miss. 21; *Harrison v. Sup'rs Milwaukee Co.* 51 Wis. 645–662.

For the respondents there was a brief by *L. P. Wetherby* and *John W. Bashford,* attorneys, and *Tenney, Bashford & Tenney,* of counsel, and the cause was argued orally by *Mr. R. M. Bashford.* To the point that proof that the injury to the land might have been prevented by placing some structure along the shore was competent and material as tending to show the negligence of the defendant, they cited *Mulcairns v. Janesville,* 67 Wis. 24; *Barbo v. Bassett* (Minn.), 29 N. W. Rep. 198; *Ind. & St. L. R. Co. v. Horst,* 93 U. S. 297.

COLE, C. J. We can see no force in the objection that the plaintiffs did not show a sufficient title to the premises alleged to have been injured to maintain this action. They were in possession, and it was not essential that they show a perfect title as against a wrong-doer. *Hungerford v. Redford,* 29 Wis. 345; *McNarra v. C. & N. W. R. Co.* 41 Wis. 69; *Carl v. S. & F. du L. R. Co.* 46 Wis. 632.

Moreover, we can see no merit in the objection that the will of Mary Field, under which they made title, was not duly proved and admitted to probate. It is true, the published notice fixed Monday, the 24th of July, as the time for the hearing of the application to admit the will to probate, and the record shows that the matter was in fact heard on the 7th of August. We must presume, in the absence of proof to the contrary, that other business prevented the hearing on the day named in the notice, or that the hearing was postponed to the subsequent day to suit

the convenience of the parties in interest. The record shows that it was established as a valid will, effectual to pass the title to real estate.

The *gravamen* of the complaint is that the defendant carelessly, negligently, and unskilfully drove large quantities of logs along and down the river adjacent to the plaintiffs' land, and permitted large quantities of them to form jams in the river and to remain so jammed for a long time, opposite to, above, and below their land, as to cause the channel of the stream to be changed or diverted from its natural course, and to cut into their land and wash it away, with the fences and structures upon it, by reason of which their buildings and improvements have been much damaged and the land much diminished in value. The defendant is a corporation, authorized by its charter (ch. 430, P. & L. Laws of 1868) to take possession of all logs and timber coming down, or to be driven down, Apple river or its tributaries, within certain limits, and to drive such logs and timber for a prescribed toll per thousand feet. It has power to maintain dams, boom sloughs, remove obstructions, and make improvements to facilitate the driving of logs and lumber on the river. The stream being a highway by water, the defendant, like a natural person, had the undoubted right, without the privilege given it by the charter, to use it for the purpose of driving logs and timber, taking reasonable care to prevent injury to riparian owners while in the exercise of the right of navigation. Counsel on both sides concede this to be the law, and that no action can be maintained except for negligence on the part of the defendant.

The material facts bearing on the issue of negligence are these: The premises washed or injured are on the south or east bank of the river. There is considerable testimony given by witnesses on both sides that the natural stream, owing to the formation of the river, has a tendency to go down against that shore. About 270 feet above the prem-.

ises is a mill dam, not owned by the defendant, with a sluiceway or chute for passing through logs and timber. About 132 feet below the dam a bar has formed, which extends down the river beyond the plaintiffs' land. The main channel of the river is east of this bar. There are several dams built above on the river, for the purpose of collecting and holding surplus water and discharging it when necessary to float logs. The evidence tends to prove that in driving logs over the dam or through the sluiceway they sometimes strike against or lodge upon this bar and form what are called "wing-jams," which have the effect to narrow the channel and increase the depth and rapidity of the water by the plaintiffs' lands; also that these wing-jams have a tendency to throw logs with increased force out into the stream and against their premises. Evidence was given, under objection, that the forming of these wing-jams might possibly be prevented by having men on the bar to keep it clear of logs, or the plaintiffs' shore might be protected against the consequences of such jams by placing a boom or other structure along their banks.

A number of instructions were given at the defendant's request. We shall not quote them at length, but observe that the jury were, in effect, charged that, the river being a navigable stream, the public and defendant had the right to use it for floating logs; that in using the stream for the purpose of floating logs the defendant, so long as it confined them within the recognized channel of the river and within its banks, was exercising the public right of navigation, to which the rights of the riparian owners were subordinate, and if in the use of the river for such purposes the defendant was guilty of no negligence, the plaintiffs could not recover for an injury sustained, even though such use had resulted in damage to them; that the mere raising of the waters of the stream to a stage sufficient to permit the driving of logs therein by means of surplus water col-

lected by dams, and maintaining a driving stage of water for such reasonable length of time as was necessary to float out the logs delivered to the defendant to drive, did not render the defendant liable so long as the water was confined within the recognized channel and between the well-defined banks of the stream; that negligence was the failure to exercise such ordinary care and skill as a reasonably careful and prudent man would exercise under all the circumstances, and unless the defendant, in the exercise of its rights in driving logs down the stream and past the plaintiffs' land, had been guilty of negligence within that rule, either in permitting jams to form in the stream and thereby causing the water and logs to be thrown against the plaintiffs' land with greater force, or in permitting such jams to remain, there could be no recovery; that, in considering the question whether the defendant had failed to exercise ordinary care and skill in permitting jams to form, the jury should take into consideration the situation of the premises, the practicability and possibility of preventing the formation of the jams by any ordinary means, the usual course and practice of lumbermen engaged in driving past similar places, the force and direction of the current, the volume of water, and the number of logs running, and the location of the jams,—all these matters were to be considered in determining the question of defendant's negligence in driving logs on the stream past the plaintiffs' land.

The court was asked to charge that the jury should not consider any evidence which had been given as to the feasibility of having a boom, or of putting any other structure or protection along the plaintiffs' shore, as such testimony had no bearing upon the question of negligence. The court refused to so charge, and an exception was taken by the defendant. We think this instruction or some equivalent charge should have been given; for, while the court had intimated that the only negligence complained of was

simply in the act of running the logs past the plaintiffs' premises or in allowing jams to be formed, and that the evidence should be confined to that issue, still much testimony was admitted, under objection, that the defendant might have protected their land by building some structure along this shore or by having men there to keep logs from striking it. Now, as we understand the law, the right of navigation is not subject to any such duty. The right of passage on a navigable stream is a common and paramount one, but must of course be exercised with due regard to the rights of riparian owners. The use of the stream must be reasonable, and it must be exercised with ordinary care and skill, such as the great mass of mankind would exercise under like circumstances, in driving logs. If the wing-jam on the bar below the dam caused the injury complained of, it might have been the duty of the defendant to prevent such jams from forming if it was practicable to do so by any reasonable means; but it was not its duty to build booms or other structures along the plaintiffs' shore to protect it from wearing or washing away. If the enjoyment of navigation on such a stream as the evidence shows Apple river to be was subject to that burden, the right itself would be of little value. Perhaps the proposition above stated is subject to the qualification that the defendant was not bound to remove the jam if it was reasonably necessary and proper for driving logs. The charter authorized the defendant to maintain dams and make all other improvements that were required to facilitate the driving of logs on the river. There is testimony that log jams are formed sometimes to raise the water and facilitate the running of logs. If the wing-jams in question were reasonably necessary and proper to facilitate the driving of logs at this point, they would be lawful, and the defendant would not be liable for any damage resulting from them to a riparian owner. *A fortiori*, the defendant

Field and others vs. The Apple River Log Driving Co.

was not bound to erect booms or other structures along the plaintiffs' shore to protect it from washing away; neither was it under any obligation to place men along the bank to keep the logs from butting against it.

These remarks have no reference to a case where an unnavigable stream is made navigable by some improvement, which of itself, or the use of the stream thus rendered navigable, causes an injury to a riparian proprietor. There, perhaps, a different rule would apply. Floating logs may cause damage to the estate of the riparian owner; but if the owner of the logs uses due care and skill in driving them he is not liable for such damage. Land on navigable streams is subject to the danger incident to the right of navigation; and where logs are driven in a stream in an *ordinarily careful, prudent manner* the owner is not liable for damage which may result to the riparian owner.

As the cause was submitted, the jury may have based their finding on the failure of the defendant to protect the plaintiffs' land by a boom or some other structure. Negligence cannot be predicated on that fact, and to sustain a liability on that ground would practically destroy the public right of navigation on such streams.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.