JORGEN F. HEIBERG v. WILD RICE BOOM COMPANY.[1]

July 31, 1914.

Nos. 18,487—(65).

Navigable river — riparian rights subordinate to rights of state.
    1. The rights of mill and other riparian owners upon navigable rivers are subordinate to the right of the state to improve the river for navigation,

[1] Reported in 148 N. W. 517.

Note.—As to the correlative rights of log owners and riparian owners, see notes in 41 L.R.A. 377, and 32 L.R.A.(N.S.) 376. And upon the question of liability for injuries to riparian owner by running of logs in stream, see notes in 41 L.R.A. 494; 64 L.R.A. 983, 986, and 35 L.R.A.(N.S.) 824.

and to the rights conferred upon logging corporations organized under section 6263, G. S. 1913, with the limitation that the rights so conferred must be exercised in a reasonable manner and so as not unnecessarily to injure or damage riparian rights.

**Damages for building flooding dams.**
2. The construction of flooding dams by such corporation is not unlawful, and no damages can be recovered therefor, unless the construction thereof and the conduct of the same be unreasonable.

**Charge to jury — rights of logging company.**
3. The charge of the court to the effect that defendant, a logging corporation, had no rights in or to the river in question, a navigable stream, superior or paramount to plaintiff, a mill owner, *held* error.

**Injury to rights of riparian owner — evidence.**
4. Evidence *held* insufficient to justify recovery for the alleged negligence of defendant in conducting a drive of logs, in consequence of which the logs were permitted to come in contact with the river bank, thus injuring plaintiff's riparian rights.

Action in the district court for Norman county to recover $7,000. The substance of the complaint is stated at the beginning of the opinion. The case was tried before Grindeland, J., who denied defendant's motions to dismiss the action and for a directed verdict upon each cause of action, and a jury which returned a verdict for $2,500 upon the first cause of action and $250 upon the second cause of action. From an order denying its motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*Lind, Ueland & Jerome,* for appellant.

*Christian G. Dosland,* for respondent.

BROWN, C. J.

The Wild Rice river has its origin or source in Eastern Mahnomen county, being supplied by various lakes and tributary streams of lesser importance, and flows in a westerly direction through Norman county and into the Red River of the North. Some 20 years or more ago plaintiff under authority of law constructed a dam across the stream at a point in Norman county, for the purpose of collecting and storing the water of the river in a mill pond to be used for power

purposes in the operation of his flour mill, and an electric light plant, subsequently installed and operated in connection with the mill. Defendant is a corporation duly organized and existing under the provisions of section 6263, G. S. 1913, and was so organized as a public service corporation, and for the purpose of handling, transporting and driving logs down this river. As such it is clothed with all the power and authority vested in such corporations by the statute under which it was organized. It has so operated upon the river since its incorporation in March, 1908. Plaintiff claimed that it has so wrongfully, unlawfully and negligently conducted its operations upon the river as to cause injury and damage to him in the operation of his mill and light plant, and this action was brought to recover therefor. The complaint states two causes of action: (1) The wrongful, unlawful and unreasonable conduct of defendant in damming up certain tributaries of the river and thereby impounding and holding back the water and preventing it from flowing in its natural way past plaintiff's mill, thus depriving plaintiff of the power he would otherwise have; and (2) negligence in driving logs down the stream by means of which the logs were permitted, after passing through the sluiceway of the dam, to butt into the banks of the river adjacent to plaintiff's land, thereby digging away the sand and injuring his riparian rights. The defendant, by its answer, put in issue the allegation of the wrongful, unlawful and negligent conduct, and specially pleaded the authority granted to it by the statute under which it was organized and incorporated. Plaintiff had separate verdicts; upon the first cause of action for $2,500, and upon the second for $250. Defendant appealed from an order denying its alternative motion for judgment or a new trial.

The evidence tends to show, in respect to the first cause of action, and it is sufficient to justify the verdict, that during the years complained of, namely, 1910, 1911 and 1912, the defendant by constructing dams in some of the tributaries of the river impounded the waters therein and prevented them from flowing in the usual and natural way past plaintiff's mill, in consequence of which plaintiff was deprived of the use of the water for power purposes; and was compelled to install in the mill a steam power plant at consider-

able expense, and that before the installation of the same the mill remained idle for the lack of power to operate it, resulting in a loss of profits that he would have realized had defendant not so withheld the water by its dams.

It is contended by defendant that the river is a navigable stream, therefore a public highway, and that its rights therein and to the use thereof are paramount and superior to the rights of plaintiff or other riparian owners; that in constructing the dams complained of it exercised, as a public service corporation, a right expressly conferred by law, and that incidental or consequential injuries resulting therefrom to riparian owners are *damnum absque injuria,* for which no recovery can be had. The trial court declined to submit the case to the jury in harmony with these contentions, and did instruct that the parties possessed equal rights in the river, to be exercised by each with due regard to the other, and that defendant had no rights which were superior to those of plaintiff. Exceptions were duly noted. The contentions of defendant involve two distinct questions, namely: (1) The relative rights of the parties in and to the use of the river; and (2) the extent of defendant's liability for the alleged wrongful withholding of the water by its dams.

1. The charge of the court was in all respects correct, viewed from the standpoint of the common law, but the failure of the court to give effect to the statutory grant of power under which the defendant was conducting its operations we think was error. Defendant was incorporated under the provisions of chapter 89, p. 106, Laws 1905 (section 6263, G. S. 1913), and had taken possession of the river under the authority there conferred. That statute provides for the incorporation of logging companies, requires them to serve the public equally and reasonably, and for a reasonable compensation, and authorizes them to take possession of any navigable stream of water in the state suitable for the handling and floating of logs, to improve the same, and its tributaries, by straightening the banks thereof and deepening its channel, and to construct booms, sluiceways, flooding dams, and other works necessary to facilitate the driving of logs thereon.

The state has exclusive control of navigable lakes and rivers with-

in its borders, with full power and authority in the improvement thereof for the purposes of navigation. It may delegate this authority to corporations organized for the purpose, and the corporation to which it is so delegated acts in a representative capacity for the state, performing a public function. No person or corporation, whether riparian owner or otherwise, not so authorized, has a right to make changes or alterations in such rivers, and any act in that respect would amount to an unlawful interference with the waterway and subject the wrongdoer to damages suffered as a result thereof. By the statute referred to the legislature has expressly granted to corporations organized thereunder authority in this respect, in broad terms, thus conferring upon them a power and right not possessed by riparian owners or other persons. The power and authority so granted, being for a public purpose and in aid of navigation, is superior and paramount to the rights of riparian owners. The improvements made under the power, dams constructed, or other works placed in the river, are not unlawful, and can be complained of by a riparian owner only when there appears an unreasonable encroachment upon his shore or mill dam rights. In other words the riparian owner holds his land subordinate to the public rights in the river, and subject to the power of the state to make necessary improvements therein in the aid of navigation. Fish v. Chicago G. W. R. Co. 125 Minn. 380, 147 N. W. 431; Minneapolis Mill Co. v. Board of Water Commrs. 56 Minn. 485, 58 N. W. 33; Doucette v. Little Falls Imp. & Nav. Co. 71 Minn. 206, 73 N. W. 847; Coyne v. Mississippi & R. R. Boom Co. 72 Minn. 533, 75 N. W. 748, 41 L.R.A. 494, 71 Am. St. 508; Holyoke Water Power Co. v. Connecticut River Co. 52 Conn. 570.

The charge of the court to the effect that defendant possessed no rights in the river superior or paramount to plaintiff was, therefore, error, and clearly prejudicial. The jury might well have concluded from the instructions that, as defendant had no superior rights in the matter, its conduct in constructing the flooding dams was unlawful and wrongful, rendering it liable for that reason alone. But the act of defendant in damming the tributaries was not unlawful nor wrongful, but the exercise of a right expressly conferred by

law, and for which no liability could attach except for unreasonably detaining the water, and unreasonably preventing it from flowing past plaintiff's mill. The question should have been submitted to the jury in this view of the legal rights of the parties.

2. The statute so extending this authority cannot be construed as a protection to the logging company for all injuries resulting to riparian owners. It serves as a protection to the extent the state would be free from liability for the same acts and no further. While it is well settled that injury and damage resulting from improvements in such rivers which are merely incidental or consequential are *damnum absque injuria* (Fish v. Chicago G. W. R. Co. 125 Minn. 380, 147 N. W. 431), the rule does not extend so far as to justify a taking of private property, or an unnecessary injury thereto. If it were construed so broadly it would clearly violate the constitutional guaranty that private property shall not be taken or damaged for public use without compensation first paid or secured. Weaver v. Mississippi & R. R. Boom Co. 28 Minn. 534, 11 N. W. 114; 2 Notes on Minn. Reports, 253. But limiting the exemption from liability to merely consequential injuries the statute is valid. Coyne v. Mississippi & R. R. Boom Co. 72 Minn. 533, 75 N. W. 748, 71 Am. St. 508; 4 Notes on Minn. Reports, 425; 41 L.R.A. 494, and note. In respect to all other injuries, resulting from such improvements, the liability of the logging company must be measured by the rule of reasonable use. It has the right to construct flooding dams in the river tributaries, but no right to unreasonably detain the water from the riparian or lower mill owners. What will amount to unreasonable conduct will necessarily be determined by the special facts of each particular case, and is for the jury to determine. The instructions of the court upon this feature of the case are not open to serious criticism. But for the error in the instructions as to the relative rights of the parties, from which the jury might conclude that as a matter of law the construction of the dams was in itself wrongful, there must be a new trial.

In view of this result we remark that the case has been considered and disposed of upon the theory that the river in question is a navi-

gable stream. The case was tried below upon that theory and the contention of plaintiff in this court that it is not navigable is not sustained. If on the new trial it shall appear that the river is not navigable, within the meaning of the law, and can be made so only by artificial means, it is probable that an entirely different rule will control the rights of the parties. 1 Farnham, Waters, 365. It is unnecessary to enter into a discussion of the law upon that subject. The question is not presented. Nor is it important that defendant was not licensed to take possession of the river by the board of county commissioners as provided for by section 5433, G. S. 1913. Defendant's authority in the premises is granted by the statute under which it was incorporated, and by that, if the river be navigable, it must stand or fall.

· 3. The assignments of error relating to plaintiff's second cause of action do not require extended mention. It is claimed that, by reason of the negligence of defendant in handling a drive, the logs after passing through the sluiceway of plaintiff's dam were permitted to damage and injure the shore land by butting into the river banks. If this is not a consequential injury under the facts as presented (Coyne v. Mississippi & R. R. Boom Co. supra), for which no recovery can be had, we are of opinion, and so hold, that the evidence is wholly insufficient to justify the conclusion of negligence on the part of defendant. We are firmly impressed that the construction of plaintiff's dam diagonally across the river resulted in the creation of a whirlpool at the sluiceway, by reason of which the logs passing through the sluiceway were thrown into the whirlpool, and caused to jam the banks of the river, a condition for which defendant is not responsible. The evidence on the new trial may, however, entirely change the situation, and make the issue one for the jury.

This covers all assignments of error that require mention. And for the error pointed out there must be a new trial.

Order reversed and new trial granted.